| | |
|---|---|
| JOSUE OLVERA ARMIJO, JOSE LUIS PONCE-ZUNIGA, KYLE IVY, DERRICK PICOU and ABRAHAM MAYORGA | CIVIL ACTION NO. 2:11-CV-02493 CONSOLIDATED WITH: CIVIL ACTION NO.: 2:12-CV-02667 |
| VERSUS | ALL CASES |
| TETRA TECHNOLOGIES, INC. | SECTION "N" (5) |

---

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO CONTINENTAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel come Tetra Applied Technologies, LLC ("Tetra Applied") and Maritech Resources, Inc. ("Maritech"), plaintiffs in consolidated action number 12-02677, and submit the following in opposition to the Motion for Summary Judgment filed by Continental Insurance Company ("CNA").

CNA's motion proposes that there are no disputed issues of fact, and that CNA is entitled to judgment as a matter of law with respect to CNA's claims:

1.    That the contractual indemnity obligation of CNA's insured Vertex Services, LLC as described in Vertex' MSA with Tetra Applied is voided by the LOAIA;

2.    That coverage for Tetra Applied and Maritech as additional insureds under the CNA policy is voided by the LOAIA; and

3.    That if Tetra and/or Maritech are additional CNA insureds, coverage for the claims asserted by Mr. Mayorga is negated by certain exclusions in the general liability coverage part.

1

With respect to the LOAIA issues Tetra Applied and Maritech adopt by reference the authorities evidenced and argument presented in support of their Cross Motion for Summary Judgment for indemnity and defense.

In this memorandum Tetra Applied and Maritech will show the purported exclusions relied upon by CNA to deny coverage do not apply under the facts presented here.

## I.   **ARGUMENT**

The "Marine Services Liability Policy" ML0872815 issued by Continental Insurance Company to Vertex Services, LLC, provides:

> We will pay those sums, in excess of the deductible, that the insured becomes legally obligated to pay as damages because of "bodily injury" to which . . . this insurance applies.

Exhibit A, CNA Policy, Declarations, para. 1(a)

The insurer relies on the following exclusion to deny coverage to Tetra Applied and Maritech as additional insureds:

> This insurance does not apply to:
>
> d.   Any obligation of the insured under a worker's compensation, United States Longshoreman's and Harbor Worker's Compensation Act, Jones Act, Death on the High Seas Act, general maritime law, Federal Employer's Liability Act, disability benefits or unemployment compensation law, or any similar law.[1]

If an exclusion is to take away what the insuring agreement provides, it must do so in unmistakably clear terms. *Parfait v. Jahncke Services, Inc.*, 484 Fed.2d 296 (5th Cir. 1973).

---

[1] Note: CNA concedes the Vertex-Tetra MSA is an "insured contract" within the meaning of the contractual liability coverage part. CNA agrees exclusion (d) applies to exclude coverage for Vertex' contractual obligation to defend and indemnify Tetra Applied and Maritech with respect to the claims asserted by Mayorga. The exclusion applies only to any obligation of an insured arising under the laws enumerated in subparagraph 2(d), and not to any obligation of Vertex arising by virtue of contract.

Exclusion 2(d) does not unambiguously exclude general liability coverage for Tetra Applied or Maritech as additional insureds under the CNA policy for the claims asserted by Mayorga.

As drafted by CNA, the exclusion applies to obligations arising under certain enumerated laws, including specifically "worker's compensation," the LHWCA, the Jones Act, FELA, disability benefits, unemployment compensation law, "or any similar law," all of which pertain to the liability of an employer for claims that are traditionally covered under Parts A (workers compensation) and B (employer liability) of a standard worker's compensation or maritime employer liability (MEL) policy, *e.g.,* claims arising within the context of an employer/employee relationship. As more fully set out in the following section, it is undisputed that Mayorga does not claim to be an employee of Tetra Applied or Maritech, and asserts no claims against those defendants in their capacity as an employer.

The inclusion of a reference to the general maritime law in subsection (d), within the context of "workers compensation…and similar laws," all of which deal specifically with employer liability, and under which an insured's obligation can only arise in its capacity as an employer, may reasonably be interpreted to limit the exclusion to obligations an insured may incur under the general maritime law, as an employer. Given the context, that is certainly the most obvious, logical and clear meaning of that subsection.

If it were otherwise, *e.g.,* if CNA had intended exclusion (d) to have a broader application, to apply whether the insured may be liable as an employer or in any other capacity, the insurer could have said so, as it did in the following exclusion (e), which provides:

> "This exclusion applies: (1) whether the insured may be liable as an employer or in any other capacity."

3

This language broadening the application of exclusion (e) is not to be found in exclusion (d). Had CNA intended exclusion (d) to apply to liability claims arising under the general maritime law other than in an insured's capacity as an employer, the insurer who drafted the contract certainly knew how to and could easily have said so. The insurer's omission from exclusion (d) of the language that explicitly makes the exclusion apply to non-employer liability claims must be deemed intentional.

If the omission of the qualifier for non-employer liability claims was not intentional, the result is at least an ambiguity: Does an exclusion that applies to obligations that arise under "workers compensation… and similar laws", and specifically lists laws that all have in common the creation of employer liability, apply "whether the insured may be liable as an employer or in any other capacity", where the insurer chose not to include that language?

The answer to that question is clearly no; in order to find otherwise the Court would have to reach two anomalous conclusions: (i) that exclusion (d) contains qualifying language that the insurer chose to leave out; and (ii) that a policy marketed by CNA as a "Marine Services Liability Policy" excluded coverage for general liability claims arising under the maritime law.

Tetra Applied and Maritech respectfully suggest those incongruities aside, under accepted rules of construction any ambiguity in exclusion (d), must be resolved in favor of coverage. *Colony National Ins. Co. v. Unique Indus. Prod. Co*., 487 F. App'x 888 (5 Cir 2012), citing *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5 Cir. 2004) and *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 99 F.2d 695, 701 (5 Cir. 1996).

**A.** **Exclusion (e)**

Exclusion (e) provides that the insurance does not apply to bodily injury to: (1) an employee of the insured arising out of and in the course of (a) employment by the insured; or (b) performing duties related to the conduct of the insured's business. CNA Marine Services Liability Policy CGL Coverage Form, Section I, subsection 2(e).

CNA admits in brief that Mayorga does not claim to be an employee of either Tetra Applied or Maritech. There is no legitimate dispute about the fact that Mayorga was not an employee of either company.[2] Exclusion (e) would apply to preclude coverage if Mayorga asserted a liability claim against Vertex. No such claim is asserted in this action.

CNA argues the exclusion would apply "to the extent that Mayorga is found to be an employee or leased worker of Tetra," but provides no evidence that would support a finding of an actual employment relationship between Mayorga and Tetra, which is a prerequisite for application of the exclusion.

**B.** **Exclusion (g)**

CNA's Marine Services Liability Policy CGL Coverage Form, Section I subsection 2 (Exclusions), (g) provides that the insurance does not apply to bodily injury arising out of (1) the ownership, maintenance, use or entrustment to others of any watercraft owned, leased, rented or chartered to any insured".

The exclusion does not apply to the claims against Maritech because those claims are premised on Maritech's alleged actions or omissions as owner of the platform, or the party that designed or supervised the lift plan, and not as an owner or charterer of the heavy lift barge DB

---

[2] Tetra adopts by reference the discovery responses attached to the cross motion for summary judgment, including pleadings Mayorga filed with the U.S. Department of Labor establishing that he was an employee of Vertex.

Arapaho.[3]  See *Farrell Lines, Inc. v. Insurance Co. of North America*, 789 F.2d 300 (5 Cir. 1986), on remand, 1988 WL 47821 (E.D. La. 1988) (watercraft exclusion was not applicable because alleged liability not based on vessel ownership only); *Grigsby v. Coastal Marine Service of Tex., Inc.,* 412 F.2d 1011 (5 Cir. 1969), watercraft exclusion did not apply to claims against insured which only supplied pumps and was not itself engaged in the maintenance of the barge; *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265 (5 Cir. 1986), which held that a shipyard constructing a vessel was not the owner *pro hac vice* of the vessel, and therefore, the watercraft exclusion was not applicable.

The watercraft exclusion does not apply to Mayorga's claims against Tetra Applied, because Mayorga claims the accident was caused by the defendant's ownership or use of inadequate or defective synthetic rigging lift straps which failed during the lift.  This is a source of potential liability separate from and independent of the insured's ownership or operation of the barge.  *Farrell Lines, Inc. v. Insurance Co. of North America*, 789 F.2d 300 (5 Cir. 1986), on remand, 1988 WL 47821 (E.D. La. 1988), watercraft exclusion was not applicable where alleged liability not based on vessel ownership only.

In *Terra Resources, Inc. v. Lake Charles Dredging,* 695 F.2d 828 (5th Cir. 1983), the defendant's barge collided with an oil production facility, allegedly because a mooring device also owned by the vessel was inadequate to hold the barge fast during a storm.  The vessel's P&I carrier settled with the owner of the facility and sued a GL carrier for indemnity. The GL carrier denied coverage pursuant to a watercraft exclusion.

---

[3] See *infra*; if Maritech were sued as a charterer of the barge the claims would be covered under a separate Charterer's Liability part.

The Fifth Circuit held the GL policy provided coverage and the carrier owed indemnity despite the water craft exclusion, because insured's ownership of an allegedly inadequate mooring device was a source of potential liability separate from and independent of the insured's ownership or operation of the barge.

If the Court here substitutes "rigging lift straps" for "inadequate mooring device" in the preceding sentence, the same result accrues in this case, *e.g.*:

> "The CNA policy provides coverage and Continental owes defense and indemnity to TETRA and Maritech, despite the water craft exclusion, because the insured's ownership or use of allegedly inadequate crane rigging lift straps are a source of potential liability separate from and independent of the insured's ownership or operation of the barge."

### C. Alternatively, Maritech is an additional insured under the Charterer's Liability Coverage

If the Court were to conclude that the watercraft exclusion applied with respect to the claims against Maritech, coverage would be provided under CNA Charterer's Liability Coverage. This part provides that the insurer will pay those sums in excess of the deductible that an insured may become legally obligated to pay as damages because of liabilities because of accidental bodily injury arising from a watercraft charter.

Plaintiffs' Second Supplemental and Amending Complaint (Doc. 27) added the following claims against Maritech Resources, LLC:

8a. ….Maritech was the owner of the platform located in the Gulf of Mexico at Eugene Island 129.

9. …Tetra and Maritech were engaged in platform decommissioning operations, which included the removal of a bridge connecting two sections of the production platform off the coast of Louisiana, in the vicinity of Eugene Island 129.

9a. …Maritech designed the salvage plan for the platform decommissioning operations, which plan included procedures for the removal of a bridge connecting two sections of the production platform off the coast of Louisiana, in the vicinity of Eugene Island 129.

21.     The injuries and damages sustained by Plaintiff(s), …Abraham Mayorga were caused in whole or part by the negligence and/or fault of Defendant, Maritech, which negligence includes the following nonexclusive particulars:

ii.     Failure to provide proper specifications for the materials to be used in the rigging and for securing and lifting the bridge involved in the accident herein;

iii.     Failure to ensure that loose piping and other unsecured objects were removed from the bridge prior to the lift to prevent injury to personnel or damage to equipment;

iv.     Failure to postpone the decommissioning operations until daylight hours or until sufficient lighting could have been obtained;

v.     Failure to ensure that the crane operator maintained proper tension on the slings after attempting the original lift, as a shock load to the nylon straps could been prevented if the slings would have had a foot or less of slack;

vi.     Failure to properly supervise the decommissioning operations while attempting to remove a bridge that connected two platforms in a safe manner and to protect the equipment and employees, i.e. failing to address all hazards before allowing employees to board the bridge."

It is undisputed that Maritech hired the heavy lift barge DB Arapaho from Tetra Applied Technologies, LLC to perform the platform decommissioning and salvage operation. The acts or omissions ascribed to Maritech in the supplemental Complaint, *e.g.,* the specifications for the rigging to lift and secure the bridge, and the alleged failure to properly supervise the decommissioning operations, to remove loose piping from the bridge prior to the lift, to postpone

the operation until daylight, to prevent shock loading on the nylon straps, and to address all hazards before allowing employees to board the bridge, all involved, related to and arose from Maritech's charter of the DB Arapaho from Tetra Applied to perform the platform decommissioning and salvage operation.

Any liability on the part of Maritech arising in the principal demand by virtue of those actions are covered under the charterer's liability coverage part of the CNA policy as liability imposed upon the insured with respect to a chartered watercraft because of accidental bodily injury arising from a watercraft charter.

### D.    Endorsement 2  - Crew and Employees exclusion

CREW AND EMPLOYEES EXCLUSION:

In consideration of the premium charged, it is understood and agreed that this policy excludes any loss, damage, claims or expenses with respect to employees of the Assured and/or members of the crew of the Vessel insured hereunder.

This provision does not exclude coverage because there is no allegation that the Tetra DB Arapaho is an "insured vessel" under the CNA Policy.

WHEREFORE, Tetra Applied Technologies, LLC and Maritech Resources, Inc. pray that the motion for summary judgment filed by Continental Insurance Company be denied, and that the motion for summary judgment for defense and indemnity by Tetra Applied Technologies, LLC and Maritech Resources, Inc. against Continental Insurance Company be granted.

Respectfully Submitted,

s/Christopher L. Zaunbrecher
Christopher L. Zaunbrecher - 09546
BRINEY FORET CORRY, LLP
413 Travis Street, Suite 200
Post Office Drawer 51367
Lafayette, Louisiana 70505-1367
Telephone: (337) 237-4070
Facsimile: (337) 233-8719
E-mail: zaunbrecher@brineyforet.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2013, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

*s/Christopher L. Zaunbrecher*
Christopher L. Zaunbrecher (09546)

"THIS IS CERTIFIED TO BE A TRUE AND CORRECT COPY"

Signed in Houston, TX on December 3, 2012

State of Texas County of __HARRIS__

On this __3RD__ day of __December__, __2012__, I certify that the preceding or attached document, is a true, exact, complete, and unaltered copy made by me of Policy Number **ML 0872815**, presented to me by the document's custodian, __Terry Childers__, and that, to the best of my knowledge, the photocopied document is neither a public record nor a publicly recordable document, certified copies of which are available from an official source other than a notary.

(Personalized Seal)
RHONDA DENBOW PORTER
MY COMMISSION EXPIRES
April 27, 2014

_____
Notary Public's Signature



# Marine Services Liability Policy Declarations

| | |
|---|---|
| **Policy Issued by:** | **Policy Number:** |
| Continental Insurance Company | ML 0872815 |
| CNA Plaza, Chicago, IL 60685 | **Renewal Of:** |
| A Stock Company | ML 0872668 |
| | **Producer's Code:** |
| | 15155000 |

**Named Insured and Mailing Address:**
Vertex Services, LLC
19238 Highway 62 South
Orange, TX 77630

**Producer's Name and Address:**
BBVA Compass Insurance Agency, Inc.
9101 LBJ Freeway, Ste. 300
Dallas, TX 75243-2057

**Business Description** Offshore Staffing, Equipment Rental and Vessel Brokering

**Policy Period**
From 06/24/2010 to 06/24/2011 at
12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS
OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN
THIS POLICY. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE FORMS FOR
WHICH AN "X" IS INDICATED. THE PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

**Coverage Forms**

| | | |
|---|---|---|
| [ X ] Commercial General Liability | [ ] Stevedores Liability | [ ] Marina Operators Liability |
| [ ] Protection and Indemnity | [ ] Terminal Operators Liability | [ ] Marina Operators P and I |
| [ X ] Ship Repairers Liability | [ ] Wharfingers Liability | [ X] Charterers Liability |

**Policy Limits and Deductible**

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations and Protection and Indemnity) | $2,000,000 |
| Products/Completed Operations Aggregate Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Deductible (other than Protection and Indemnity) | $See Premium Schedule |
| Protection & Indemnity Deductible | $ |

**Sublimits, if any, are shown on the applicable Coverage Forms Declarations**

**Premiums**
All Coverages other than Protection and Indemnity
Premium Base:    [X ] Gross Receipts        [ ] Other (describe) _____

ML 001A    ED. 8/98

# Marine Services Liability Policy Declarations cont'd.

**Premiums cont'd.**

Premium Base Amount : <u>Per Endorsement #1</u>  Rate: <u>Per Endorsement #1</u>

| | | | |
|---|---|---|---|
| Advance Premium: | | | $39,000 |
| Protection and Indemnity Premium: | | | $ |
| **Total Policy Premium:** | | | $39,000 |
| **Premium is subject to audit:** | [X ] Yes | [ ] No | |

---

**Form(s) and Endorsement(s) made a part of this policy at time of issue:**
ML002, ML003, ML004, ML005,ML010, ML011, ML030, ML032, Charterers Legal Liability, General Terms and Conditions,
Endorsements 1,2,3,4,5,6,7,8,9,10,11,12,13,14,15,16,17,18

Countersigned: 7/8/2010
(Date)

By: _Terrel Wilder_
(Authorized Representative)

THESE DECLARATIONS TOGETHER WITH THE COMMON CONDITIONS, COVERAGE FORM DECLARATIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

# MARINE SERVICES LIABILITY POLICY

## COMMON CONDITIONS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS.

All coverages of this policy are subject to the following conditions, unless specifically stated otherwise in the Coverage Form.

### GENERAL CONDITIONS

#### A. LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the Limits of Insurance provision(s) of these Common Conditions and of each Coverage Form, fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought;

   c. Persons or organizations making claims or bringing "suits";

   d. Watercraft involved; or

   e. Coverage Forms involved.

2. The General Aggregate is the most we will pay in any one policy year for the sum of:

   a. Medical expenses under Coverage C of the Commercial General Liability Coverage Form;

   b. Damages and "defense costs" under Coverage A of the Commercial General Liability Coverage Form, except damages and related "defense costs" because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

   c. Damages and "defense costs" under Coverage B of the Commercial General Liability Coverage Form,

   d. Damages and related "defense costs" under any other Coverage Form attached to this policy.

   However, the General Aggregate does not apply to any Protection and Indemnity limits provided in this policy.

3. The Products-Completed Operations Aggregate Limit is the most we will pay in any one policy year under Coverage A of the Commercial General Liability

Coverage Form for damages and "defense costs" because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.(1)**Damages and "defense costs" under Coverage A of the Commercial General Liability Coverage Form; and
   **(2)**Medical expenses under Coverage C of the Commercial General Liability Coverage Form,

   because of all "bodily injury" and "property damage" arising out of any one "occurrence"; and

   **(3)**Damages and "defense costs" because of all "personal injury" and all "advertising injury" sustained by any one person or organization under Coverage B of the Commercial General Liability Coverage Form.

   **b.** Damages and "defense costs" provided by any other Coverage Form attached to this policy, and arising out of any one "occurrence".

5. Notwithstanding 1. through 4. above, any limit or sublimit contained elsewhere in this policy or added by endorsement shall apply. However, in no event shall any such limit or sublimit increase the occurrence limit or the aggregate limits.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional

period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## B. DEDUCTIBLES

1. Our obligation under the insurance provided, to pay damages, medical payments and "defense costs" on your behalf applies only to the amount of damages, medical payments and "defense costs" in excess of any deductible amounts stated in the Declarations or attached Schedule(s).

2. The deductible amount applies under either all coverages combined (except Protection and Indemnity) or to Protection and Indemnity, to all applicable damages, medical payments and "defense costs" because of any injury or damage as the result of any one "occurrence" , regardless of the number of persons or organizations who sustain damages because of that "occurrence" .

3. The terms of this insurance, including those with respect to:

   **a.** Our right and duty to defend any "suits" seeking those damages; and
   **b.** Your duties in the event of an "occurrence", claim, or "suit"

   apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## C. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to

us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## D. WHEN WE DO NOT RENEW.

If we decide not to renew this policy , we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## E. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## F. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine, audit and make copies of your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## G. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of you, your workers or the public. And we do not warrant that conditions;

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## H. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative

but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## I. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## J. PREMIUM ADJUSTMENT

1. We will compute all premiums for this policy in accordance with our rules and rates.

2. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

3.a. The premium shown on the Declarations as advance premium is a deposit premium. You warrant that complete and accurate records of the operations covered by applicable Coverage Form(s) will be kept and such records will be open to examination by us or our representatives at any time during business hours.

b. Within 10 days after the end of each "reporting period", you must file with us a report containing a complete record of operations and the total amount of the applicable Premium Base (as designated on the Declarations) for that "reporting period". The earned premium is to be computed by using the applicable rate multiplied by the amount of the Premium Base and applied against the Advance Premium until the same is exhausted. When the Advance Premium is exhausted, all

further earned premiums are due and payable to us at the time of filing the report on which the premium is due.

c. If this insurance is cancelled, you must report the total Premium Base up to and including the date of cancellation.

## K. MINIMUM PREMIUM

You must pay at least the minimum premium shown in the applicable Declarations, except in the event of cancellation of this policy by us. The minimum premium will only apply when the computed premium is less than the minimum premium.

## L. REPRESENTATIONS

By accepting this policy, you agree that:

1. All of the information and statements provided to us by you are true, accurate and complete and shall be deemed to constitute material representations made by all of the insureds;

2. We have issued this policy in reliance upon your representations;

3. The misrepresentation of any material matter by you or your agent will render this policy null and void and relieve us from all liability herein.

## M. SEPARATION OF INSUREDS

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

1. As if each Named Insured were the only Named Insured; and

**2.** Separately to each insured against whom claim is made or "suit" is brought.

## N. FINANCIAL RESPONSIBILITY

This policy does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar federal, state or local law. It is a condition of this policy that it shall not be submitted to the United States Coast Guard or any other federal, state or local agency as evidence of financial responsibility. We do not consent to be guarantors.

## LOSS CONDITIONS

## A. BANKRUPTCY

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

## B. DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT

**1.** You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim. To the extent possible, notice should include:

   **a.** How, when and where the "occurrence" took place;

   **b.** The names and addresses of any injured persons and witnesses; and

   **c.** The nature and location of any injury or damage arising out of the "occurrence".

**2.** If a claim is made or "suit" is brought against any insured, you must:

   **a.** Immediately record the specifics of the claim or "suit" and the date received; and

   **b.** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**3.** You and any other involved insured must:

   **a.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **b.** Authorize us to obtain records and other information;

   **c.** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**4.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## C. LEGAL ACTION AGAINST US.

No person or organization has a right under this policy:

**1.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**2.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## D. OTHER INSURANCE

If other valid and collectible insurance is available to the insured for a loss we cover under this policy , our obligations are limited as follows:

**1. Primary Insurance**

This insurance is primary except when

2. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in below.

**2. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

a. That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

b. That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

c. If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of the Commercial General Liability Coverage Form.

When this insurance is excess, we will have no duty under this policy to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess

of the Limits of Insurance shown in the Declarations of this policy.

**3. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**E. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**DEFINITIONS**

1. **"Advertising injury"** means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. **"Auto"** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached

machinery or equipment. But "auto" does not include "mobile equipment".

3. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. **"Coverage territory"** means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in **a.** above; or

         (b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

      (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. **"Defense costs"** means payments allocated to a specific claim or "suit" for its investigation, settlement or defense, including:

   a. Attorney fees and all other litigation expenses.

   b. The cost of bonds to appeal a judgment or award in any claim or "suit" we defend. We do not furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual

loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   "Defense costs" do not include salaries and expenses of our "employees" or your "employees", other than:

   (1) That portion of our employed attorneys' fees, salaries and expenses allocated to a specific claim or "suit"; and

   (2) The expenses described in **5.d.** above.

6. **"Employee"** includes a "leased worker". "Employee" does not include a "temporary worker", or any contractor or subcontractor doing work on your behalf.

7. **"Executive officer"** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

8. **"Impaired property"** means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**9. "Insured contract"** means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10. "Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker", or any contractor or subcontractor doing work on your behalf.

**11. "Loading or unloading"** means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading and unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12. "Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    (1) Power cranes, shovels, loaders, diggers or drills; or

    (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    (1) Equipment designed primarily for:

        (a) Snow removal;

        (b) Road maintenance, but not construction or resurfacing; or

        (c) Street cleaning;

    (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Occurrence also includes offense.

14. **"Personal injury"** means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

15. **"Products-completed operations hazard":**

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        (a) When all of the work called for in your contract has been completed.

        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        (c) When that part of the work done at a job site has been put to its intended use by any

person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**16. "Property damage" means:**

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**17. "Reporting Period"** means the period of time for which new reports are due, as shown in the applicable Declarations:

a. Monthly, reports must show the applicable premium basis as of the last day of the month; and the "reporting period" ends on the last day of each month.

b. Quarterly, reports must show the applicable basis as of the last day of

each month; but the "reporting period" ends on the last day of each third month from policy inception.

c. Semi-Annual, reports must show the applicable premium basis as of the last day of each month; but the "reporting period" ends on the last day of the sixth month from policy inception and on the policy anniversary date.

d. Annual, reports must show the applicable premium basis as of the last day of each month; but the "reporting period" ends on the policy anniversary date.

**18. "Suit"** means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19. "Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20. "Your product"** means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**21. "Your work"** means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MARINE SERVICES LIABILITY POLICY**

**POLLUTION BUY BACK**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SHIP REPAIRER'S LIABILITY COVERAGE FORM

STEVEDORE'S LIABILITY COVERAGE FORM

TERMINAL OPERATOR'S LIABILITY COVERAGE FORM

WHARFINGER'S LIABILITY COVERAGE FORM

MARINA OPERATOR'S LEGAL LIABILITY COVERAGE FORM

The exclusion relating to pollution and/or contamination is deleted and replaced by the following:

**A.** This insurance does not apply to:

1. Any loss, damage, cost, liability, expense, fine or penalty:

   **(a)** Which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time;

   **(b)** Any loss, cost or expense arising out of any:

   **(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   **(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

   Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, oil, petroleum products, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

**B.** With respect to the Ship Repairer's Liability Coverage Form, Paragraph A. above does not apply to sums paid or payable or your liability, for the physical loss of the property discharged, dispersed, seeped, migrated, released or escaped, provided that such sums, or such liability, are (is) covered elsewhere in the Ship Repairer's Liability Coverage Form. The insurance provided by this Paragraph B. is not subject to the following Paragraphs C. and D.

**C.** Paragraph A. above shall not apply, however, provided that you establish that all of the following conditions have been met:

   **1.** The "occurrence" was neither expected nor intended by the insured. An "occurrence" shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the insured.

   **2.** The "occurrence" can be identified as commencing at a specific time and date during the term of this policy.

   **3.** The "occurrence" became known to the insured within seventy-two (72) hours after its commencement.

   **4.** The "occurrence" was reported in writing to us within thirty (30) days after having become known to the insured.

   **5.** The "occurrence" did not result from the insured's intentional and willful violation of any government statute, rule or regulation.

**D.** Paragraph A. does not apply to your reasonable mitigation or clean up costs that result from a pollution "occurrence" which meets the conditions in Paragraph C. above and to which this insurance applies. Clean up costs shall be defined as those expenses incurred as a direct result of the removal, treatment, detoxification or neutralization of pollutants or hazardous substances as legally mandated by governmental authority excluding, however, the cost of environmental impact studies. Such clean up expenses are part of and not in addition to the limits of insurance of this policy.

**E.** Nothing contained in this endorsement shall operate to provide any coverage with respect to:

   **1.** Loss of, damage to or loss of use of property directly or indirectly

resulting from subsidence caused by your subsurface operations;

**2.** Removal of, loss of or damage to subsurface oil, gas or any other substance;

**3.** Fines, penalties, punitive damages, exemplary damages, treble damages or any other damages resulting from the multiplication of compensatory damages;

**4.** Any site or location used in whole or in part for the handling, processing, treatment, storage, disposal or dumping of any waste materials or substances or the transportation of any waste materials or substances;

**5.** Losses resulting from blowout and/or cratering of any well;

**6.** Losses resulting from and/or caused by watercraft which you own, operate, charter, lease and/or borrow; or

**7.** Losses arising out of or resulting from the hazardous properties of nuclear material as excluded in this policy.



## Commercial General Liability Coverage Form Declarations

**Policy No. ML 0872815**

**Limits of Insurance** (These limits are part of and not in addition to the Policy Limits shown on the Marine Services Liability Policy Declarations)

Fire Damage Limit      $50,000 any one fire
Medical Expense Limit      $10,000 any one person

### Form of Business

[ ] Individual      [X ] Limited Liability Company
[ ] Joint Venture      [ ] Organization (Other than Partnership or Joint Venture)

### Premium

Advance (Deposit) Premium      $Included

ML 004    ED. 5/97              Page 1 of 1

# MARINE SERVICES LIABILITY POLICY

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II) with respect to this Coverage Form.

Refer to DEFINITIONS in the **COMMON CONDITIONS** of the policy for words and phrases that have special meaning.

"Defense Costs" as defined in this policy are included in the limit of this policy and are not in addition to those limits.

### SECTION I – COVERAGES
### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

    a. We will pay those sums, in excess of the deductible, that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages and "defense costs" is limited as described in LIMITS OF INSURANCE (SECTION III); and

        (2) Our right and duty to defend ends when we have used up the applicable limit(s) of insurance.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2) The "bodily injury" or "property damage" occurs during the policy period.

    c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions.**

    This insurance does not apply to:

    a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        (1) That the insured would have in the absence of the contract or agreement; or

        (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

            (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

            (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages

to which this insurance applies are alleged.

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. Any obligation of the insured under a workers compensation, United States Longshoremen's and Harbor Workers' Compensation Act, Jones Act, Death on the High Seas Act, General Maritime Law, Federal Employers' Liability Act, disability benefits or unemployment compensation law or any similar law.

e. "Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, oil, petroleum products, chemicals and waste, Waste includes material to be recycled, reconditioned or reclaimed.

g. "Bodily injury" or "property damage" arising out of:

(1) The ownership, maintenance, use or entrustment to others of any watercraft owned, leased, rented or chartered to any insured. Use includes operation and "loading or unloading".

This exclusion g.(1) does not apply to:

(a) A watercraft while ashore on premises you own or rent; or

(b) Liability assumed under any "insured contract" for the ownership, maintenance or use of watercraft; or

(2) The ownership, maintenance, use or entrustment to others of any aircraft or "auto" owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion g.(2) does not apply to:

(a) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to the insured;

(b) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft; or

(c) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. "Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war,

insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. "Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened exposure at any time to asbestos; or

(2) Any loss, cost or expense that may be awarded or incurred:

(a) By reason of a claim or "suit" for any such injury or damage; or

(b) In complying with a governmental direction or request to test for, monitor, clean up, remove, contain or dispose of asbestos.

Asbestos means the mineral in any form whether or not the asbestos was at any time:

(1) Airborne as a fiber, particle or dust;

(2) Contained in or formed a part of a product, structure or other real or personal property;

(3) Carried on clothing;

(4) Inhaled or ingested; or

(5) Transmitted by any other means.

p. "Bodily injury" or "property damage" arising out of the actual or alleged manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, or exposure to, lead paint or products containing lead whether or not the lead is or was at any time airborne as a particle, contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever.

q. "Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person.

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, employment references, negligent hiring, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the

employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r.** "Bodily injury" or "property damage" arising out of any duties or responsibilities imposed upon the insured by the Employee Retirement Income Security Act of 1974, Public Law 93-406 or any amendment or addition thereto.

**s.** Any liability based upon or arising out of any intentional or unintentional violation of any provision of any Federal or State securities law, including but not limited to the Securities Act of 1933 or the Securities Exchange Act of 1934 or any amendments or additions thereto.

**t.** Damages of the following types:

**(1)** Civil,criminal, administrative or other fines or penalties;

**(2)** Any portion of a judgment or award that represents a multiple of the compensatory amounts, liquidated damages or punitive or exemplary damages;

**(3)** Equitable relief, injunctive relief , declarative relief or any other relief or recovery other than monetary amounts; or

**(4)** Judgments or awards because of acts deemed uninsurable by law.

**u.(1)** To loss or expense from claims or "suits" against any person or persons jointly or severally who was or now is or may herein after be a director or officer, for breach of duty, neglect, error, misstatement, misleading statement or omission while acting in their respective capacities as directors and officers.

**(2)** For loss or expense from claims or "suits" against any corporation brought by any director or officer for indemnification or to be reimbursed for any damages or costs or expenses incurred in connection with the defense of any action, "suit" or proceeding or in connection with appeal thereof to which any director or officer is or was a party thereto which is or was based on breach of duty, neglect, error, misstatement, misleading statement or

omissions while acting in their respective capacities as directors and officers. The fact that the corporation may be liable to the director or officer because of state law, article or certificate of incorporation of the corporation, or bylaws of the corporation or separate contracts shall not alter the condition of this exclusion.

**v.(1)** Any liability alleged, arising out of, based upon or attributable to any computer software, computer hardware, computer operating systems, computer networks, microprocessors (computer chips) or any other computerized or electronic equipment or components that actually or allegedly fails, partially fails, is impaired by, causes damage (including infection of software or data) or is in any way affected by the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**(2)** This exclusion also applies to any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by you or for you to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in paragraph v.(1) above.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement.**

**a.** We will pay those sums, in excess of the deductible, that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages and "defense costs" is limited as described in LIMITS OF INSURANCE (SECTION III); and

**(2)** Our right and duty to defend ends when we have used up the applicable limit(s) of insurance.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions.

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

**(5)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**(6)** Arising out of the actual, alleged or threatened exposure at any time to asbestos; or

**(a)** Any loss, cost or expense that may be awarded or incurred:

**(1)** By reason of a claim or "suit" for any such injury or damage; or

**(2)** In complying with a governmental direction or request to test for, monitor, clean up, remove, contain or dispose of asbestos.

Asbestos means the mineral in any form whether or not the asbestos was at any time:

**(a)** Airborne as a fiber, particle or dust;

**(b)** Contained in or formed a part of a product, structure or other real or personal property;

**(c)** Carried on clothing;

**(d)** Inhaled or ingested; or

**(e)** Transmitted by any other means.

**(7)** Arising out of the actual or alleged manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, or exposure to, lead paint or products containing lead whether or not the lead is or was at any time airborne as a particle, contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever.

**b.** "Personal injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person.

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, employment references, negligent hiring, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**c.** "Advertising injury" arising out of:

**(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

**(2)** The failure of goods, products or services to conform with advertised quality or performance;

**(3)** The wrong description of the price of goods, products or services; or

**(4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**d.** Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, oil, petroleum products, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**e.** Damages of the following types:

**(1)** Civil, criminal, administrative or other fines or penalties

**(2)** Any portion of a judgment or award that represents a multiple of the compensatory amounts, liquidated damages or punitive or exemplary damages;

**(3)** Equitable relief, injunctive relief , declarative relief or any other relief or recovery other than monetary amounts; or

**(4)** Judgments or awards because of acts deemed uninsurable by law.

**f.** "Personal injury" or "advertising injury" arising out of any duties or responsibilities imposed upon the insured by the Employee Retirement Income Security Act of 1974, Public Law 93-406 or any amendment or addition thereto.

**g.** Any liability based upon or arising out of any intentional or unintentional violation of any provision of any Federal or State securities law, including but not limited to the Securities Act of 1933 or the Securities Exchange Act of 1934 or any amendments or additions thereto.

**h.(1)** To loss or expense from claims or "suits" against any person or persons jointly or severally who was or now is or may herein after be a director or officer, for breach of duty, neglect, error, misstatement, misleading statement or omission while acting in their respective capacities as directors and officers.

**(2)** For loss or expense from claims or "suits" against any corporation brought by any director or officer for indemnification or

to be reimbursed for any damages or costs or expenses incurred in connection with the defense of any action, "suit" or proceeding or in connection with appeal thereof to which any director or officer is or was a party thereto which is or was based on breach of duty, neglect, error, misstatement, misleading statement or omissions while acting in their respective capacities as directors and officers. The fact that the corporation may be liable to the director or officer because of state law, article or certificate of incorporation of the corporation, or bylaws of the corporation or separate contracts shall not alter the condition of this exclusion.

## COVERAGE C. MEDICAL PAYMENTS

**1. Insuring Agreement.**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions.**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are

payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

      (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

      (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Form.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the

organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. This Coverage Form is subject to the Limits of Insurance Condition of the **COMMON CONDITIONS**. Nothing contained in this Coverage Form shall increase those limits.

2. Subject to 1. above the Fire Damage Limit is the most we will pay under Coverage A for damages and "defense costs" because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

3. Subject to 1. above the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

## THIS COVERAGE FORM IS SUBJECT TO THE FOLLOWING NUCLEAR ENERGY LIABILITY EXCLUSION:

The following exclusion applies in addition to those stated elsewhere in this Coverage Form:

1. This insurance does not apply:

   a. Under any Liability Coverage to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the "insured" is, or had this policy not been

issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   b. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   c. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material" if:

      (1) The "nuclear material" (i) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (ii) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

   "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from

the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

a. Any "nuclear reactor";

b. Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.



## Ship Repairers Liability Coverage Form Declarations

**Policy No. ML 0872815**

**Limits of Insurance** (These limits are part of and not in addition to the Policy Limits shown on the Marine Services Liability Policy Declarations)

Each Watercraft Limit                 $1,000,000

Miles Limitation (25 miles unless otherwise specified)

**Premises at:** 19238 Highway 62 South Orange, Tx. 77630

**Premium**

Advance (Deposit) Premium          $Included

# MARINE SERVICES LIABILITY POLICY

## SHIP REPAIRERS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Refer to DEFINITIONS in the **COMMON CONDITIONS** of the policy for words and phrases that have special meaning.

"Defense Costs" as defined in this policy are included in the limits of this policy and are not in addition to those limits.

### SECTION I - SHIP REPAIRERS LIABILITY COVERAGE

1. **Insuring Agreement**

   We will pay those sums, in excess of the deductible, that you, as Ship Repairer, become legally obligated to pay as damages because of liabilities imposed upon you because of accidental:

   a. Physical loss of, or damage to, watercraft and their equipment, cargo, or other interests on board, occurring only while such watercraft are in your care, custody or control for the purpose of repair or alteration, or while such watercraft are being moved via inland waters, for a distance not in excess of 25 miles or the Miles Limitation if shown on the Declarations, in connection with repairs or alteration.

   b. Loss or damage caused by a watercraft covered under a. above while in your care, custody or control and being navigated or operated away from premises described in the Declarations within permitted waters by your employees or in tow of a tug not owned by or demise chartered to you. Your employee engaged in the navigation of such watercraft shall possess such license as is required by the United States Coast Guard or any other applicable regulatory authority to perform the duties being carried out by said employee.

We will have the right and duty to defend you against any "suit" seeking those damages. However, we will have no duty to defend you against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result under a. or b. above. But:

   (1) The amount we will pay for damages and "defense costs" is limited as described in LIMITS OF INSURANCE (SECTION II); and

   (2) Our right and duty to defend ends when we have used up the applicable limit of insurance.

This insurance applies only if the loss or damage is caused by an "occurrence" that occurs during the policy period.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided.

2. **Exclusions**

   This insurance does not apply to:

   a. "Bodily injury", "personal injury" or "advertising liability" or medical expenses;

   b. Any liability assumed under a contract or agreement. This exclusion does not apply to liability that you would have in the absence of the contract or agreement;

   c. Loss, damage or expense arising in connection with work on any watercraft which has carried flammable or combustible liquid in bulk as fuel or cargo or any watercraft which has carried flammable compressed gas in bulk, unless such work is done in accordance with the requirements of the rules and regulations of the National Fire Protection Association applicable to such work;

   d. Any portion of loss or damage for which you have been released from liability;

**e.** Demurrage, loss of time, loss of freight, loss of charter and/or similar and/or substituted expenses;

**f.** Loss, damage or expense which may be recoverable under any other insurance inuring to your benefit except as to any excess over and above the amount recoverable thereunder;

**g.** Collision liability, tower's liability or liabilities insured against under the customary forms of hull or protection and indemnity policies arising out of the operation of any watercraft owned by, or demise chartered to you or any affiliated or subsidiary concern or party;

**h.** Any liability arising out of or resulting from the infidelity, misappropriation, secretion, conversion or other acts of dishonest character on your part, your agent, employees or subcontractors;

**i.** Loss of or damage to property owned, rented, leased or chartered to you, or in your possession (other than watercraft, their equipment or cargo, which are in your custody for the purpose of repair or alteration) or utilized by you in your business as a ship repairer;

**j.** Any liability resulting from or arising out of unexplained loss or damage, mysterious disappearance, shortage or conversion of goods;

**k.** Claims for monies, securities or documents;

**l.** Loss, damage or expense arising or resulting from, directly or indirectly, the ownership or chartering or operation of such watercraft by you or any affiliated or subsidiary concern;

**m.** Loss of or damage to watercraft placed in your care, custody, or control for the purpose of storage regardless of whether any work is also to be performed on the watercraft; provided that this exclusion shall not apply to any physical loss or damage to the watercraft (otherwise covered under this policy) resulting directly from repairs or alterations to said watercraft carried out during such storage period;

**n.** The expense of redoing the work improperly performed by you or on your behalf or the cost of replacement of materials, parts or equipment furnished in connection therewith;

**o.** The cost or expense of repairing, replacing or renewing any faultily designed part or parts which cause(s) loss of or damage to the watercraft or for any expenditure incurred by reason of a betterment or alteration in design;

**p.** Loss, damage or expense caused by, resulting from or incurred by:

    **(1)** Capture, seizure, arrest, taking, restraint, detainment, confiscation, preemption, requisition or nationalization, and the conse-quences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise;

    **(2)** Any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter, or by any mine, bomb or torpedo;

    **(3)** Hostilities or warlike operations (whether there be a declaration of war or not), but the phrase, "hostilities or warlike operations (whether there be a declaration of war or not)" shall not exclude collision or contact with aircraft, rockets or similar missiles or with any fixed or floating object, stranding, heavy weather, fire or explosion unless caused directly (independently of the nature of the voyage or service which the watercraft concerned or in the case of a collision, any other watercraft involved therein, is performing) by a hostile act by or against a belligerent power; for the purpose of the foregoing, power includes any authority maintaining navy, military or air forces in association with a power. In addition to the foregoing exclusions this insurance shall not cover any loss, damage or expense to which a warlike act or the use of military or naval weapons is a contributing cause, whether or not your liability therefore is based on negligence or otherwise, and whether in time of peace or war. The embarkation, carriage and disembarkation of troops, combatants, or material of war, or the placement of the watercraft in jeopardy as an act or measure of war taken in the actual process of a military engagement, with or without your consent, shall be considered a warlike act for the purposes of this policy.

**(4)** The consequences of civil war, revolution, rebellion, insurrection, military or usurped power, the imposition of martial law, or civil strife arising therefrom, or piracy, or from any loss, damage or expense caused by or resulting directly or indirectly from the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political or terrorist purposes, and whether any loss, damage or expense resulting therefrom is accidental or intentional.

**(5)** Malicious acts or vandalism, strikes, lockouts, political or labor disturbances, civil commotions, riots, or the acts of any person or persons taking part in such "occurrence" or disorder;

**q.** The firing or testing of any weapon of war on the watercraft;

**r.** Any nuclear incident, reaction, radiation or any radioactive contamination, whether controlled or uncontrolled, and whether the loss, damage, liability or expense be approximately or remotely caused thereby, or be in whole or in part caused by, contributed to, or aggravated by the risks and liabilities insured under this policy, and whether based on your negligence or otherwise;

**s.** Any loss of or damage to watercraft occurring while in your care, custody or control and otherwise covered under Insuring Agreement 1.a., but not discovered within 6 months of the delivery of the watercraft to the owner or demise charterer, or within 6 months after work is completed, whichever first occurs;

**t.** Any loss, damage, cost, liability, expense, fine or penalty:

**(1)** Which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time;

**(2)** Any loss, cost or expense arising out of any:
  **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way

respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, oil, petroleum products, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

This exclusion, however, does not apply to sums paid or payable, or your liability for the physical loss of the property discharged, dispersed, seeped, migrated, released or escaped, provided that such sums, or such liability, are (is) covered elsewhere under the terms and conditions of this Coverage Form.

**u.** Damages of the following types:

**(1)** Civil, criminal, administrative or other fines or penalties;

**(2)** Any portion of a judgment or award that represents a multiple of the compensatory amounts, liquidated damages or punitive or exemplary damages;

**(3)** Equitable relief, injunctive relief , declarative relief or any other relief or recovery other than monetary amounts; or

**(4)** Judgments or awards because of acts deemed uninsurable by law.

## SECTION II - LIMITS OF INSURANCE

**1.** This Coverage Form is subject to the Limits of Insurance Condition of the **COMMON CONDITIONS**. Nothing contained in this Coverage Form shall increase those limits.

**2.** Subject to **1.** above, the Each Watercraft Limit is the most we will pay for damages under Ship Repairers Liability Coverage because of all loss or damage to each watercraft including its equipment, cargo and other interests arising out of any one "occurrence" covered under Insuring Agreement **1. a.**



## Charterers Liability Coverage Form Declarations

**Policy No. ML 0872815**

**Limits of Insurance** (See the Policy Limits shown on the Marine Services Liability Policy Declarations)

**Premium**

Advance (Deposit) Premium          $Included

ML 032   ED. 5/98                                                    Page 1 of 1

# MARINE SERVICES LIABILITY POLICY

## CHARTERERS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Refer to DEFINITIONS in the **COMMON CONDITIONS** of the policy and SECTION III of this Coverage Form for words and phrases that have special meaning.

"Defense Costs" as defined in this policy are included in the limits of this policy and are not in addition to those limits.

### SECTION I - CHARTERERS LIABILITY COVERAGE

#### 1. Insuring Agreement

We will pay those sums, in excess of the deductible, that you, as a Charterer of watercraft, become legally obligated to pay as damages because of liabilities imposed upon you with respect to chartered watercraft because of accidental:

**a.** Physical loss of or damage to the chartered watercraft, including demurrage and/or detention liability directly resulting therefrom, imposed upon you by reason of "watercraft charter" provisions with respect to safe berths, safe ports or the watercraft lying safely afloat or liabilities for such loss or damage arising out of watercraft loading and/or unloading operations

**b.** Damage to property or "bodily injury" other than that covered by Paragraph 1.a. above arising from a "watercraft charter".

We will have the right and duty to defend you against any "suit" seeking those damages. However, we will have no duty to defend you against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result under a. or b. above. But:

**(1)** The amount we will pay for damages and "defense costs" is limited as described in LIMITS OF INSURANCE (SECTION II); and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance.

This insurance applies only if the damage or injury is caused by an "occurrence" that occurs during the policy period and subsequent to the execution of the "watercraft charter".

Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from "bodily injury".

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided.

**ML 030 Ed 5/98**                    **Page 1 of 4**

## 2. Exclusions

This insurance does not apply to:

a. "Bodily injury" to the captain and/or crew of the chartered watercraft;

b. Any liability (other than as provided in Insuring A 1. a. above) assumed under contract or agreement. This exclusion does not apply to liability that you would have in the absence of the contract or agreement.

c. Any liability arising from a "bareboat or demise charter" of any watercraft;

d. Detention and/or demurrage except as provided in Insuring Agreement 1.a.above. Claims for demurrage resulting from quarantine existing at a port of discharge, loading or call without your knowledge shall, however, be covered by this Coverage Form;

e. Loss, damage or expense to cargo carried on the chartered watercraft, whether on board or not; or for general average, salvage, sue and labor costs,or collision liability in respect to such cargo or applicable to freight or charter hire;

f. Any liability arising as the result of the carriage,.custody or handling of cargo of a kind prohibited by the terms of the "watercraft charter" or contrary to law;

g. Any liability arising as the result of the carriage, custody or handling as cargo on the chartered watercraft of explosives, ammonium nitrate, or toxic or corrosive materials, except such as are specifically described in the Declarations;

h. Any liability arising as the result of your ordering the watercraft to enter any ice-bound port or place or any place where lights, lightships, marks or buoys on the watercrafts arrival are or are likely to

be withdrawn by reason of ice, or where there is risk that ordinarily the watercraft will not be able (on account of ice) to enter, reach or leave such ort or ports;

i. Loss, damage and/or expense which may be recoverable under any other insurance, carried by or for your account;

j. "Bodily injury" to passengers carried or for loss or damage to their baggage or personal effects for which you may be directly or indirectly liable.

k. Loss, damage or expense caused by, resulting from or incurred by:

(1) Capture, seizure, arrest, taking, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise;

(2) Any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter, or by any mine, bomb or torpedo;

(3) Hostilities or warlike operations (whether there be a declaration of war or not), but the phrase, "hostilities or warlike operations (whether there be a declaration of war or not)" shall not exclude collision or contact with aircraft, rockets or similar missiles or with any fixed or floating object, stranding, heavy weather, fire or explosion unless caused directly (independently of the nature of the voyage or service which the watercraft concerned or in the case of a collision, any other watercraft involved therein, is performing)

by a hostile act by or against a billigerent power, for the purpose of the foregoing power includes any authority maintaining navy, military or air forces in association with a power. In addition to the foregoing exclusions this insurance shall not cover any loss, damage or expense to which a warlike act or the use of military or naval weapons is a contributing cause, whether or not your liability therefore is based on negligence or otherwise, and whether in time of peace or war. The embarkation, carriage and disembarkation of troops combatants, or material of war, or the placement of the watercraft in jeopardy as an act or measure of war taken in the actual process of a military engagement, with or without your consent, shall be considered a warlike act for the purposes of this policy.

(4)The consequences of civil war, revolution, rebellion, insurrection, military or usurped power, the imposition of martial law, or civil strife arising therefrom, or piracy, or from any loss, damage or expense caused by or resulting directly or indirectly from the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political or terrorist purposes, and whether any loss, damage or expense resulting therefrom is accidental or intentional.

(5) Malicious acts or vandalism, strikes, lockouts, political or labor disturbances, civil commotions, riots, or the acts of any person or persons taking part in such event or disorder;

l. The firing or testing of any weapon of war on the chartered watercraft;

m. Any nuclear incident, reaction, radiation or any radioactive contamination, whether controlled or uncontrolled, and whether the loss, damage, liability or expense be approximately or remotely caused thereby, or be in whole or in part caused by, contributed to, or aggravated by the risks and liabilities insured under this policy, and whether based on your negligence or otherwise;

n. Any loss, damage, cost, liability, expense, fine or penalty:

(1) Which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time;

(2) Any loss, cost or expense arising out of any:

(a)Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effecs of pollutants.

Pollutants means any solid, liquid,gaseous, or thermal irritant or contaminant including smoke,vapor, soot, fumes, acid, alkalis, oil, petroleum products, chemicals and waste.

Waste includes material to be recycled, reconditioned or reclaimed.

o. Liability imposed on you as punitive or exemplary damages, however described.

## SECTION II - LIMITS OF INSURANCE

This Coverage Form is subject to the Limits of Insurance Condition of the **COMMON CONDITIONS.** Nothing contained in this Coverage Form shall increase those limits.

## SECTION III- ADDITIONAL DEFINITIONS

The following definitions are added to DEFINITIONS in the **COMMON CONDITIONS:**

1. **"Bareboat or demise charter"** - under this form of "watercraft charter" , the owner transfers the watercraft as a bare boat, that is , without captain, crew, fuel, or provisions, to the watercraft charterer, upon whom falls the entire burden for the operations of the watercraft and the complete responsibility for the watercraft's preservation and safety.

2. **"Watercraft Charter "** means a document or agreement made for consideration embodying the terms of a contract for the hire of the whole or part of a watercraft. Under the "watercraft charter", the owner of the watercraft hires the watercraft or part thereof to a charterer for a specific period of time or for a specific voyage. Under this type of charter, the responsibility for the operation and safety of the watercraft remain with the watercraft owner.

## CHARTERER'S LEGAL LIABILITY RIDER (Annual Basis)

1. In consideration of the stipulations hereinafter named and the payment of premiums as hereinafter provided, and subject to the limits of liability, exclusions, conditions and other terms of this policy, this Company agrees to indemnify the Insured to the extent of this policy's proportion as hereinafter stated of all sums which the Insured as charterer of vessels hereinafter described shall become obligated to pay as follows:

   (a) By reason of liabilities for physical loss or damage to the chartered vessel, including demurrage and/or detention liability directly resulting therefrom, imposed on the Insured by reason of charter party provisions with respect to "safe berths", "safe ports" or the vessel lying "safely afloat", or liabilities for such loss or damage arising out of loading and/or unloading operations.

   (b) By reason of the liabilities imposed upon the Insured as such charterer by law for property damage, loss of life or bodily injury other than that covered by Clause 1 (a);

   (c) By reason of legal costs and/or fees or expenses of counsel occasioned by the defense of any claim against the Insured for any liability or alleged liability of the Insured covered by this policy, provided that such costs, fees and/or expenses are incurred with the prior written consent of this Company.

2. The term of this policy shall be the period of time commencing at **12:01 a.m.**
   of the **24**          day of **June**          **2010**, and ending at **12:01 a.m.**
   of the **24**          day of **June**          **2011**, standard time at place of issuance, unless this
   insurance be sooner terminated or made void as hereinafter provided.

3. This policy is applicable only in respect to the charters by the insured of self-propelled steel steamers of motor vessels chartered for the carriage of cargo consisting of **As agreed**
   for voyages from **As agreed**
   to **As agreed**
   for which voyage or voyages the vessel shall report at her loading berth within the term of this policy, or, in the event of voyages in ballast, shall sail on such voyage within the term of this policy and shall cover until cargo is discharged at the conclusion of such voyage, or, in the event of a voyage in ballast, until the vessel is safely moored at the port of destination. In respect of time or consecutive voyage charters the coverage shall be continuous during the term of this policy but shall not extend beyond such term except in respect of a voyage for which the vessel shall report at her loading berth or sail as described above, and shall then continue in effect with respect to such voyage only until cargo is discharged, or the vessel is safely moored at the port of destination, as the case may be.

4. Notwithstanding anything to the contrary contained in this policy, it is hereby expressly understood and agreed that this insurance does not cover any liability:

   (a) Assumed by the Insured beyond that imposed by law in the absence of contract except as provided in Clause 1(a);
   (b) Arising from a bareboat or demise charter of any vessel;
   (c) For detention and demurrage except as provided in Clause 1 (a) and claims for demurrage resulting from quarantine existing at a port of discharge, loading or call without the knowledge of the Insured shall, however, be covered by this policy;
   (d) For loss, damage or expense to cargo carried or to be carried on the vessel chartered, whether on board or not; or for general average, salvage, sue and labor costs, or collision liability in respect to such cargo or applicable to freight or charter hire;
   (e) Arising as the result of the carriage, custody or handling of cargo of a kind prohibited by the terms of the charter party or contrary to law;
   (f) Arising as the result of the carriage, custody or handling as cargo on the chartered vessel of explosives, ammonium nitrate, or toxic or corrosive materials, except such as are described in paragraph 3 hereof;
   (g) Arising as the result of the Insured ordering the vessel to enter any icebound port or place or any place where lights, lightships, marks or buoys on vessel's arrival are or are likely to be withdrawn by reason of ice, or where there is risk that ordinarily the vessel will not be able on account of ice to enter, reach or leave such port or ports;
   (h) Caused by or resulting from (1) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack; (a) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces, or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or forces; (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war; (3) insurrection, rebellion, revolution, civil war usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade;
   (i) For loss, damage and/or expense caused by or resulting from strikes, lockouts, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrence or disorder;

(j) For loss, damage and/or expense which may be recoverable under any other insurance, carried by or for the account of the Insured, except as to any excess over and above the amount recoverable thereunder;

(k) For death or injuries to passengers carried or for loss or damage to their baggage or personal effects for which the Insured may be directly or indirectly liable.

5. This Company shall be liable only for this policy's proportion of the excess over and above $10,000 of the aggregate of claims under coverages 1(a), 1(b) and 1(c) arising out of any one loss, accident or occurrence and its maximum liability in respect of the aggregate of claims under coverages 1(a), 1(b) and 1(c) arising out of any one loss accident or occurrence shall be $1,000,000. This policy's proportion of any claim shall be that which the maximum liability of this Company herein stated bears to the sum of $1,000,000.

6. The policy is issued in consideration of a deposit premium of $As agreed based upon an estimated As agreed laden voyages on one or more chartered vessels during the term of this policy at a premium of $As agreed part of $As agreed each laden voyage. The Insured agrees to report to this Company immediately upon the expiration of this policy, the total number of laden voyages that actually attached during the term of this policy. If the number of such voyages exceed the estimate, the Insured shall pay additional premium at the above rate and if the number of such voyages is less than the estimate, this Company agrees to return premium at the above rate.

7. It is further stipulated and is a consideration for this insurance that in the event of any occurrence which may result in loss, damage and/or expense, for which this Company is or may become liable under this insurance, notice thereof shall be given to this Company as soon as practicable, and further, that any and every process, pleading and paper of any kind relating to such occurrence shall be forwarded promptly to this Company.

8. In respect of any accident or occurrence likely to give rise to a claim under this insurance, the Insured is obligated to and shall take such steps to protect its and (and this Company's) interests as would reasonably be taken in absence of this or similar insurance. This insurance, however, shall be void and of no force or effect, in respect of any accident or occurrence, in the event the Insured shall make or shall have made any admission of liability either before or after such accident or occurrence.

9. It is expressly understood and agreed that no liability shall attach under this insurance until the liability of the Insured has been determined by final judgment against the Insured or by agreement between the Insured and the Claimant with the written consent of this Company; in the event the Insured shall fail or refuse to settle any claim, as authorized by this Company, the liability of this Company to the Insured shall be limited to the amount for which settlement could have been made.

10. Whenever required by this Company, the Insured shall aid in securing information, evidence, obtaining of witnesses, and cooperate with this Company in all matters which this Company may deem necessary in the defense of any claim or suit or appeal from any judgment in respect of any occurrence as hereinbefore provided.

11. The Company shall have the option of naming attorneys to represent the Insured in the defense of any claim, insured hereunder, made against the Insured, and this Company may exercise exclusive direction and control of the said defense. The Insured shall cooperate with this Company and shall not assume any obligations, admit any liability, or incur any expense for which this Company may be liable, without prior written approval.

12. In the event of any accident, loss, damage or injury for which claim may be made under this policy, the Insured agrees to subrogate to this Company all rights which the Insured may have against any other person or entity with respect to said accident, loss or occurrence. In case of any agreement or act, past or future, by the Insured, whereby any right of recovery of the Insured against any person or entity, is released or lost, which would, on payment of loss by this Company, belong to this Company but for such agreement or act, this insurance shall be vitiated to the extent that this Company's right of subrogation has been impaired thereby; provided, however, that the right of this Company to retain or recover any premium paid or due hereunder shall not be affected. The cost and expense of prosecuting any claim, suit, action or arbitration in which this Company as Insurer shall have an interest by subrogation or otherwise, shall be divided between the Insured and this Company proportionately to the amount which they would be entitled to receive respectively if such prosecution should be successful. It is agreed that this Company waives any right of subrogation against any subsidiary, affiliated or inter-related Company of the Insured, excepting to the extent that any such Company is insured against the liability asserted.

13. No claim or demand against this Company under this policy shall be assigned or transferred, and no person, excepting a legally appointed Receiver of the property of the Insured, shall acquire any rights against this Company by virtue of this insurance without the expressed consent of this Company.

14. No action shall lie against this Company for the recovery of any loss sustained by the Insured unless such action be brought against this Company within one (1) year after the final judgment or decree is entered in the litigation against the Insured, or in case the claim against this Company accrues without the entry of such final judgment or decree, unless such action be brought within one (1) year from the date of the payment of such claim; provided, however, that where such limitation of time is prohibited by the laws of the State wherein this policy is issued, then and in that event no action under this policy shall be shall be sustainable unless commenced within the shortest limitation permitted under the laws of such State.

15. This policy may be cancelled by either party on giving the other thirty days' notice in writing, such cancellation not to prejudice a voyage already attached in accordance with Clause No. 3.

16. All other terms and conditions of this policy not in conflict herewith remain unchanged.

Attached to and forming part of Policy No. **H 0872815** of **Continental Insurance Company**

_____ Agent



## GENERAL POLICY TERMS & CONDITIONS:

### SEAWORTHINESS CLAUSE

Warranted that at the inception of this Policy the "Vessel(s)" shall be in a seaworthy condition and, thereafter, during the currency of the Policy, the Assured shall exercise due diligence to keep the "Vessel(s)" seaworthy, and in all regards, fit, tight, and properly manned, equipped and supplied.

### CANCELLATION

This Policy may be cancelled by either party giving thirty (30) days, (ten (10) days in the event of non-payment of premium) written or telegraphic notice to the other, if at the option of Underwriters pro rata, if at the request of the Assured short rates, will be charged - and arrival.

### DEFINITION OF OCCURRENCE

The liability of this company in respect of loss, damage, costs, fees expenses or claims arising out of or in consequence of any one occurrence is limited to the amount hereby insured. For the purpose of this clause each occurrence shall be treated separately, but a series of claims hereunder arising from the same occurrence shall be treated as due to that occurrence.

### COMBINED SINGLE LIMIT OF LIABILITY

The Limit of Liability under the is subject to a combined single limit of $1,000,000.00 regardless of the number of vessels or coverages involved in any one accident or occurrence including all costs and/or expenses subject to the deductible.

Any applicable deductible amount including the Annual Aggregate Deductible, if any, is to be included within the Combined Single Limit amount. For the purposes of this clause, each accident or occurrence shall be treated separately, but in a series of claims hereunder arising from the same accident or occurrence these shall be treated as due to that accident or occurrence.

### NOTICE OF LOSS

Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Company is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to this Company and/or the Agent or Broker of Record that arranged this insurance, as soon as practicable after receipt thereof, all communications processes, pleading and other legal papers or documents relating to such occurrences.

Within sixty (60) days after the loss, unless such time is extended in writing by this company, the insured shall render to this company a proof of loss, signed and sworn by the insured, stating knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all other in the property, the actual cash value of each item and origin of the loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any said property, any changes in the title, use, occupation, location possession or exposures of said property since the issuing of this policy, and if required and obtainable, verified plans and specifications of any vessel, equipment, fittings or machinery lost or damaged. The insured, as often as may be reasonably required, shall exhibit to any person designated by this company, all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as may be reasonably required, shall produce for any person designated by this company vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

Whenever required by this Company, the Assured shall aid in securing information, evidence, and in obtaining of witnesses, and shall cooperate with this Company (except in a pecuniary way) in the defense of any claim or suit or in the appeal from any judgment, in respect of any occurrence as herein before provided.

## CREW & EMPLOYEES EXCLUSION

In consideration of the premium charged, it is understood and agreed that this policy excludes any loss, damage, claims or expense with respects to employees of the Assured and/or members of the crew of the Vessel insured hereunder.

## SUBROGATION RIGHTS

Except as otherwise provided herein, the Company shall be subrogated to all the rights which the Assured may have against any other person, corporation, vessel or interest, in respect to any payment made under this policy, to the extent of such payment, and the Assured shall, upon request of the Company, execute all documents necessary to secure the Assurer such rights. It is a condition of this insurance that if the Assured shall, before or after loss, waive, compromise, settle or otherwise impair any right or claim to which the Company would be subrogated upon payment of a loss, then this Company shall be free from liability with respect to such loss.

## LITIGATION

No suit, action or proceeding brought by the Assured against Underwriters for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months after Underwriters have denied liability for payment of claim; except that in the case of a claim arising under the Collision Clause, no suit or action shall be sustainable unless brought within twelve (12) months next after the Assured shall have discharged his liability. Provided, however, that if by the laws of the state within which this Policy is issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted, by the laws of such state, to be fixed herein. Warranted that no action will be taken by the Assured or his assignees to enforce payment of any claim under this Policy except before the tribunals of the United States of America, Canada or England.

## CONCEALMENT, FRAUD

This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

## ERRORS AND OMISSIONS

This policy shall not be invalidated by an unintentional delay, error, omission, or oversight in making declarations or reports or in rendering reports of values under charter, lease or other agreements, provided that same be reported to this Company as soon as practicable, as soon as known or discovered by the Assured and an additional premium, if due, be paid.

## POLLUTION EXCLUSION

This policy, with respect to all insurance's provided hereunder, shall not insure against any loss, damage, cost, liability, expense, fine or penalty, of any kind or nature whatsoever, imposed upon the Assured, directly or indirectly in consequence of, or with respect to, the actual or potential discharge, emission, spillage or leakage upon or into the sea, waters, land or air, of petroleum products, chemicals, or other substances of any kind or nature whatsoever. AND PROVIDED FURTHER, but without limiting the generality of the foregoing in any way, that this exclusion is intended to and shall exclude any loss, damage, cost, liability, expense, fine or penalty incurred by or imposed on the Assured(s), directly or indirectly, in consequence of, or with respect to the use by the Assured(s) of any pesticide, fumigant or decontaminant whether in the normal course of its business or otherwise. All other terms and conditions of this policy shall be deemed amended to the extent necessary to give full force and effect to this exclusion.

## SEVERABILITY

If any clause, word, phrase, provision or portion of this Policy shall be found to be unenforceable, invalid or void for any reason whatsoever, by any court of competent jurisdiction or by any arbitration panel, such determination shall not affect any other clause, word, phrase, provision or portion of this Policy, and each shall remain in full force and effect.

## CAPTIONS AND HEADINGS

All captions and headings in this policy are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.



**ENDORSEMENT NO. 1**                                    Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE
**Continental Insurance Company** ISSUED TO **Vertex Services, LLC**

### Premium Schedule

Coverage: MGL/SRLL

Deductible: $5,000.00 Per Occurrence except            $25,000 for S&A Pollution

Premium: $29,000 Minimum and Deposit

Rate: .90% Per $100 Gross Receipts

EST: $4,000,000 estimated

Notwithstanding anything contained herein to the contrary, it is understood and agreed that the Assured,
by acceptance of the Policy, agrees to keep an accurate record of all Gross Receipts and /or Payroll for
any marine operation covered under the terms and conditions of this Policy, which record shall be open for
examination by representatives of this Company at all times during business hours, during the term of this
Policy, or thereafter, and further agrees to report to this Company no later than Ten (10) days following the
Policy expiration date the total amount thereof (collected and uncollected) for the preceding period or such
period of time as is within the term of this Policy, the earned premium hereunder to be computed thereon
at the rate of **$.90 per $100** and shall be in addition to the Deposit Premium until same is exhausted,
following which further earned premium is due. It is agreed that, except in the event of cancellation of this
Policy by this Company, the Minimum Premium hereunder shall be **$29,000,**.

Coverage: Charters Legal Liability

Deductible: $10,000. Per Occurrence except       $25,000 for S&A Pollution

Premium: $10,000 Flat Per Annum

Rate: $1,000.00 per Charter for commercial barges, tugs, and supply vessels. (not to exceed 10
charters).

EST: 5 charters

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX  75243-2057**

E6C REV 5/74                                                        745 Printed in U.S.A.



**ENDORSEMENT NO. 2**

Date of Issuance  **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE  **06/24/2010**  FORMS A PART OF POLICY NO.  **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO  **Vertex Services, LLC**

## CREW & EMPLOYEES EXCLUSION

**In consideration of the premium charged, it is understood and agreed that this policy excludes any loss, damage, claims or expense with respects to employees of the Assured and/or members of the crew of the Vessel insured hereunder.**

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX  75243-2057**

E6C REV 5/74

745 Printed in U.S.A.



**ENDORSEMENT NO. 3**

Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE Continental Insurance Company ISSUED TO **Vertex Services, LLC**

### Subcontractor(s) Certificate Warranty

In consideration of the premium charged, it is hereby warranted that in the event that a subcontractor is hired, the assured will obtain a Certificate of Insurance from each subcontractor evidencing valid and collectible Comprehensive General Liability Insurance in an amount of not less that $1,000,000. any one occurrence subject to aggregate limits only where customary, and that the Named Insured will be added as an Additional Insured under said insurance, as their interest may appear.


ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX 75243-2057**

E6C REV 5/74

745 Printed in U.S.A.



**ENDORSEMENT NO. 4**

Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO **Vertex Services, LLC**

## OCCUPATIONAL DISEASE EXCLUSIONS CLAUSE

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:

1. Any liability of whatsoever nature of the Assured, whether for damage, maintenance and cure, fines and penalties or funeral expenses, arising out of loss of life, or injury to, or illness of, any person due to occupational and/or industrial diseases and/or injuries gradually contracted from the character of his present or prior employment, because thereof, and incidental thereto, and whether or not such employment be in the service of the assured or otherwise; and

2. Any costs and expenses of investigating and/or defending any claim or suit against the Assured arising out of a liability or alleged liability of the Assured excluded above.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

    **BBVA Compass Insurance Agency, Inc.**
    **9101 LBJ Freeway, Ste. 300**
    **Dallas, TX 75243-2057**

E6C REV 5/74

745 Printed in U.S.A.



**ENDORSEMENT NO. 5**

Date of Issuance  **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE  **06/24/2010**  FORMS A PART OF POLICY NO.  **ML 0872815** OF THE
Continental Insurance Company ISSUED TO  **Vertex Services, LLC**

## LOCATION SCHEDULE

**Vertex Services, LLC**
**19238 Hwy.625**
**Orange, Tx. 77630**

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX  75243-2057**

E6C REV 5/74

745 Printed in U.S.A.



**ENDORSEMENT NO. 6**

Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO **Vertex Services, LLC**

## Traveling Workmen Endorsement

This endorsement modifies insurance provided under the SHIP REPAIRERS LIABILITY COVERAGE FORM.

The insurance provided under this Coverage Form is extended to apply whenever any persons employed by you or on your behalf are on board the watercraft or in any port for the purpose of effecting repairs or alterations, notwithstanding that such persons may be signed on as members of the watercraft's crew.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

> **BBVA Compass Insurance Agency, Inc.**
> **9101 LBJ Freeway, Ste. 300**
> **Dallas, TX 75243-2057**

E6C REV 5/74

745 Printed in U.S.A.



**ENDORSEMENT NO. 7**

Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO **Vertex Services, LLC**

# EXCLUSION – SILICA

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to **Exclusions** of **Section I - COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

This insurance does not apply to:

1. "Bodily injury" arising in whole or in part out of the actual, alleged or threatened respiration or ingestion at any time of "silica" ; or

2. "Property damage" arising in whole or in part out of the actual, alleged or threatened presence of "silica".

**B.** The following exclusion is added to **Exclusions** of **Section I - COVERAGE B. PERSONAL AND ADVERTISING LIABILITY:**

This insurance does not apply to "personal and advertising injury" arising in whole or in part out of the actual, alleged or threatened exposure at any time to or the presence of "silica".

**C.** The following definition is added:

"Silica" means the chemical compound silicon dioxide (SiO2) in any form, including dust which contains "silica".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX 75243-2057**

**G-145718A**

**ML 036 ED. 8/04**



ENDORSEMENT NO. 8                                    Date of Issuance  06/25/2010

THIS ENDORSEMENT, EFFECTIVE  06/24/2010 FORMS A PART OF POLICY NO.  ML 0872815 OF THE
Continental Insurance Company ISSUED TO  Vertex Services, LLC

# EXCLUSION – RESPIRABLE DUST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to **Exclusions** of **Section I - COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

This insurance does not apply to:

1. "Bodily injury" arising in whole or in part out of the actual, alleged or threatened respiration or ingestion at any time of "respirable dust"; or

2. "Property damage" arising in whole or in part out of the actual, alleged or threatened presence of "respirable dust".

B. The following exclusion is added to **Exclusions** of **Section I - COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to "personal and advertising injury" arising in whole or in part out of the actual, alleged or threatened exposure at any time to or the presence of "respirable dust".

C. The following definition is added:

"Respirable dust" means respirable particulate matter but does not include living organisms.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.
9101 LBJ Freeway, Ste. 300
Dallas, TX  75243-2057**

G-145719A                                              ML 037 ED. 8/04



**ENDORSEMENT NO. 9**                                   Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO **Vertex Services, LLC**

### AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX 75243-2057**

G145710 - AIMU U.S. Economic And Trade Sanctions Clause: Ed(09/03)



THIS ENDORSEMENT, EFFECTIVE  **06/24/2010** FORMS A PART OF POLICY NO.  **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO  **Vertex Services, LLC**

## AIMU EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE AND CHEMICAL, BIOLOGICAL, ETC. EXCLUSION CLAUSE

## AIMU EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE (March 1, 2003) WITH U.S.A. ENDORSEMENT

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

1.   In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from

   1.1   ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

   1.2   the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

   1.3   any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

   1.4   the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

(U.S.A. ENDORSEMENT)

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that

if fire is an insured peril

and

where the subject matter insured is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Extended Radioactive Contamination Exclusion Clause March 1, 2003 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

# AIMU CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND ELECTROMAGNETIC  EXCLUSION CLAUSE (March 1, 2003)

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.
9101 LBJ Freeway, Ste. 300
Dallas, TX 75243-2057**

ExRace-NBC Excl : Ed(05/03)



**ENDORSEMENT NO. 11**

Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO **Vertex Services, LLC**

**EXCLUSION OF CERTIFIED ACTS OF TERRORISM**
**UNDER THE TERRORISM RISK INSURANCE ACT, AS EXTENDED**

It is agreed as follows:

The Policyholder has been previously notified of the availability of and the price for coverage of "**Certified Acts of Terrorism**" under the Terrorism Risk Insurance Act, as extended and reauthorized ("Act"). As defined in Section 102(1) of the Act, an "act of terrorism" means any act that is certified by the Secretary of the Treasury - in concurrence with the Secretary of State, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**The Policyholder has opted to not purchase such coverage under this policy.** Any exclusions contained in this policy that apply to Certified Acts of Terrorism have full force and effect.

DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES
Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Act, as amended. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the Insurance Company providing the coverage. The Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

All other provisions of this policy remain unchanged and in full force and effect.

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX  75243-2057**



**ENDORSEMENT NO. 12**                                        Date of Issuance  **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO  **Vertex Services, LLC**

# FUNGI / MOLD / MILDEW / YEAST / MICROBE EXCLUSION

### COMMERCIAL GENERAL LIABILITY

A.  The following exclusion is added to SECTION I, 2., EXCLUSIONS

This insurance does not apply to:

**Fungi and Microbes**

(1)  "Bodily injury", "property damage, " personal injury or "advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, contact with, exposure to, existence of, or presence of any "fungi" or "microbes."

(2)  Any loss, cost or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of "fungi" or microbes" by any insured or by anyone else.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage, loss, cost or expense.

B.  The following definitions are added **DEFINITIONS:**

"Fungi" means any form of fungus, yeast, mold, mildew, or mushroom, including mycotoxins, spores, scents, byproducts or other substances produced or released fungi.  But " fungi" does not include fungi that were deliberately grown for human consumption.

"Microbe" means any bacteria, virus, or any other non-fungal, single celled or colony-form organism, including any toxins, scents, byproducts or other substances it produces or releases, whose injurious source is in or on a building or its contents. But "microbe" does not mean:

(1) Microbes that were transmitted directly from person to person;

(2) Microbes that caused food poisoning, if your business is food processing, sales or serving.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX  75243-2057**

ML 035 (Ed. 06/03)



**ENDORSEMENT NO. 13**

Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO **Vertex Services, LLC**

## GULF OF MEXICO EXTENSION

It is agreed the coverage afforded by this policy is extended to cover operations of the Named Insured in the Gulf of Mexico.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.
9101 LBJ Freeway, Ste. 300
Dallas, TX 75243-2057**

E6C REV 5/74

745 Printed in U.S.A.



**ENDORSEMENT NO. 14**

Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE Continental Insurance Company ISSUED TO **Vertex Services, LLC**

<u>In Rem Endorsement</u>

It is agreed that an action "in rem" against a "Vessel" owned by, leased to or chartered by the Named Assured shall be treated as if it were an action "in personam" against the Named Assured.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX 75243-2057**

E6C REV 5/74

745 Printed in U.S.A.



**ENDORSEMENT NO. 15**

Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO **Vertex Services, LLC**

## PRIMARY & NON-CONTRIBUTORY INSURANCE ENDORSEMENT

It is hereby noted and agreed, effective inception, that this policy shall be considered primary and non-contributory to any similar insurance held by third parties in respect of work performed by you under written contractual agreement(s) with said third parties. The third part to whom this endorsement applies is: **AS REQUIRED BY WRITTEN CONTRACT**

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX  75243-2057**

E6C REV 5/74

745 Printed in U.S.A.



**ENDORSEMENT NO. 16**

Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE Continental Insurance Company ISSUED TO **Vertex Services, LLC**

Other Repair Operations Endorsement

1. You are covered for Your Marine General Liability in respect of other repair operations that do not come within the scope of Your ship repairing operations. You shall declare to Us the gross charges in respect of such operations to be adjusted at a rate to be agreed.

2. So far only as concerns such other repair operations, the expressions "ship repairers", "ship repairing" and "Business" wherever used in this insurance, shall be deemed to include other repair operations of the Insured.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX 75243-2057**

E6C REV 5/74

745 Printed in U.S.A.



**ENDORSEMENT NO. 17**

Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO **Vertex Services, LLC**

<u>Action Over/Indemnity Buyback</u>

In consideration of the premium charged hereunder, it is hereby understood and agreed that this policy, subject to all its terms, conditions, warranties, and limit of liability, is endorsed to indemnify the assured for amount for which it will have become liable to pay and shall have paid on account of investigation, defense and indemnity as respects its responsibilities, if any, to third parties by virtue of defense and indemnity obligations assumed under written contract or agreement and arising from accidental death of or bodily or personal injury to or illness of any employee(s) of the assured, except insofar as same may arise from occupational disease.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX 75243-2057**

E6C REV 5/74

745 Printed in U.S.A.



**ENDORSEMENT NO. 18**                                    Date of Issuance **06/25/2010**

THIS ENDORSEMENT, EFFECTIVE **06/24/2010** FORMS A PART OF POLICY NO. **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO **Vertex Services, LLC**

### ADDITIONAL INSURED AND WAIVER OF TRANSFER OF RIGHTS OF RECOVERY

### AGAINST OTHERS TO US ENDORSEMENT (BLANKET)

This endorsement modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE FORM.

A.  WHO IS AN INSURED (Section II) is amended to include any person or organization as an Insured under this policy to the extent you are obligated by an "insured contract" to include them as Additional Insureds, but only with respect to "your work".

B.  The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Loss Condition in the Common Conditions is amended by the addition of the following:

We waive any right of recovery we may have against any person or organization because of payments we make for "bodily injury" or "property damage" arising out of "your work" with that person or organization, but only to the extent that you are obligated by an "insured contract" to provide such waiver of rights of recovery and only with respect to "your work" or to your premises or the premises you use.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX 75243-2057**

E6C REV 5/74                                            745 Printed in U.S.A.



**ENDORSEMENT NO. 19**

Date of Issuance **07/06/2011**

THIS ENDORSEMENT, EFFECTIVE **04/04/2011** FORMS A PART OF POLICY NO. **ML 0872815** OF THE **Continental Insurance Company** ISSUED TO **Vertex Services, LLC**

It is hereby understood and agreed effective April 4, 2011, Vertex Services, LLC address is amended to read:

**3505 Sage Rd. @ 2503**
**Houston, Tx. 77056**

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

AGENT OR BROKER NAME AND ADDRESS

**BBVA Compass Insurance Agency, Inc.**
**9101 LBJ Freeway, Ste. 300**
**Dallas, TX 75243-2057**

E6C REV 5/74

745 Printed in U.S.A.

# CARGO LEGAL LIABILITY

**AGGREGATE LIABILITY:** $1,000,000.        **PREMIUM:** $ Included

This policy covers with respect to the vessels only which are insured under policies and

1.   For account of Assured.

2.   Loss, if any, payable to assured.

3.   This policy, subject to the terms and conditions herein provided, covers only the assured's liability in respect of loss of or damage to cargo which is being transported by scheduled vessels upon, at and from and/or between points and/or places upon the Inland Lakes and Waterways of Louisiana, Texas and Mississippi; or held covered at rates to be agreed provided, however, where practicable, notice of a proposed extension of these limits be given Underwriters prior to the vessel's leaving the limits provided above, by or for the account of the assured in the capacity of vessel owner, charterer, carrier, transporter, bailee, or custodian.

4.   This policy also covers costs and expenses, incurred with Underwriters' approval, of investigation and/or defending any claim or suit against the assured arising out of a liability or an alleged liability of the assured covered by this policy.

5.   This policy does not cover against any liability assumed by the assured beyond that imposed by law; provided, however, that if by agreement, or otherwise, the assured's liability is lessened, then Underwriters shall receive the benefit of such lessened liability.

6.   This policy does not insure against loss or damage caused by or resulting from:

(a) hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending or expected attach, (a) by any government or sovereign (de jure or de facto), or by any authority maintaining or using military, naval, or air forces; or (b) by military, naval, or air forces, or (c) by an agent of any such government, power, authority or forces;

(b) any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

(c) insurrection, rebellion revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence, seizure or destruction under quarantine, or customs regulations, confiscation or by order of any government or public authority or risks of contraband or illegal transportation or trade.

7.   It is understood and agreed that no liability shall attach under this policy for the first $5,000 DOLLARS of any claim hereunder, (including costs, expenses, etc. covered hereby) each occurrence to be adjusted separately. (For the purpose of this clause each occurrence shall be treated separately, but a series of claims arising from the same occurrence shall be treated as due to that occurrence).

8.   This policy shall be secondary to, in excess of, and answerable only to the extent of the deficiency of, any valid and collectible insurance in favor of the assured, whether supplied by the assured or others.

9.   In the event of any occurrence which may result in loss or damage, for which Underwriters are or may become liable under this insurance, notice thereof shall be given to Underwriters as soon as practicable. Further that any and every process, pleading and paper of any kind relating to such occurrence shall be forwarded promptly to Underwriters.

10.  Underwriters shall have the option of naming the attorneys who shall represent the assured in the prosecution or defense of any litigation or negotiations between the assured and third parties concerning any claim, loss or interest covered by this policy, and Underwriters shall have the direction of such litigation or negotiations.

11.  This insurance hereunder shall be voidable, in respect of any occurrence, in the event the assured shall make or shall have made any admission of liability either before or after such occurrence on in the event the assured shall interfere in any negotiations of Underwriters for settlement or in any legal proceedings

in respect of any claim for which Underwriters are or may be liable under this insurance; provided, however, that in respect of any occurrence likely to give rise to a claim under this insurance the assured is obligated to and shall take such steps to protect its (and/or Underwriters) interests as would reasonably be taken in the absence of this or similar insurance. If the assured shall fail or refuse to settle any claim as authorized by Underwriters, the liability of Underwriters shall be limited to the amount for which settlement could have been made.

12. The cost of defending any suit against the assured or any claim, based on a liability or an alleged liability of the assured covered by this insurance, shall be payable by Underwriters subject to the policy deductible but Underwriters shall not be liable for the cost or expense of prosecuting or defending any suit unless the same shall have been incurred with the written consent of Underwriters. The cost and expense of prosecuting any claim in which Underwriters shall have an interest by subrogation or otherwise, shall be divided between the assured and Underwriters proportionately to the amount which they would be entitled to receive respectively, if the suit should be successful.

13. Whenever required by Underwriters, the assured shall aid in securing information, evidence, obtaining of witness, and cooperate with underwriters (except in a pecuniary way) in all matters which Underwriters may deem necessary in the defense of any claim or suit or appeal from any judgment in respect of any occurrence as herein before provided.

14. Underwriters shall be subrogated to all the rights which the assured may have against any other person, vessel or entity, in respect of any claim or payment made under this policy, to the extent of such claim or payment, and assured shall, upon the request of the Underwriters execute all documents necessary to secure Underwriters such rights.

15. No claim or demand against Underwriters under this policy shall be assignable or transferred, and no person, not including a legally appointed receiver of the property of the assured, shall acquire any right against Underwriters by virtue of this insurance without the expressed consent of Underwriters.

16. No action shall lie against Underwriters to recover for any loss under this policy, until the amount of the damage for which the assured is liable is determined, either by a final judgment against the assured or by agreement between the assured and the claimant with the written consent of Underwriters nor in any event unless such action is brought against Underwriters within one (1) year after final judgment is entered in said litigation provided, however, that where such limitations of time is prohibited by the laws of the State wherein this policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such State.

17. This policy attached with respect to cargo coming at risk of the assured on June 24, 2010 and expiring June 24, 2011 (beginning and ending Noon Standard Time at place of issuance).

18. The aggregate liability of Underwriters (including costs, expenses, etc., covered hereby) shall not exceed One Million & 00/100 ($1,000,000) DOLLARS with respect to any claim arising directly or indirectly from any one occurrence. (For the purpose of this clause each occurrence shall be treated separately, but a series of claims arising from the same occurrence shall be treated as due to that occurrence.)

19. This policy with respect to the vessel insured hereunder also covers the affiliated companies of the assured, be they owners, subsidiaries, or interrelated companies, and as bareboat charterers, and/or operators and/or in whatever capacity.

20. Either party may cancel this policy by giving thirty (30) days notice in writing, if at the option of Underwriters pro rata rates, if at the request of assured short rates will be charged.

All other terms and conditions remain unchanged.